FILED
2023 Jan-10  AM 09:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TYRONE BROOKS,         )
           )
    Plaintiff,        )
           )
v.           )    Case No. 2:21-cv-01028-ACA-NAD
           )
AKEEM EDMONDS,     )
           )
    Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff Tyrone Brooks filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights while he was incarcerated at the W.E. Donaldson Correctional Facility.[1]  Doc. 1.  In his complaint, Plaintiff Brooks names a single Defendant:  Sergeant Akeem Edmonds.  Doc. 1 at 2.

Brooks alleges that Defendant Edmonds used excessive force in removing Brooks from his cell on May 28, 2021.  Doc. 1 at 11–12.  Brooks seeks punitive damages.[2]  Doc. 1 at 5.

---

[1] Plaintiff Brooks has since been transferred to the Holman Correctional Facility in Atmore, Alabama.  *See* Doc. 17.

[2] Brooks also requests injunctive relief in the form of release from segregation into the general population.  Doc. 1 at 5.  But that request is moot because Brooks no longer is incarcerated at Donaldson.  *See Robbins v. Robertson*, 782 F. App'x 794, 799 (11th Cir. 2019) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief," even where "there is no assurance that he will not be returned to the jail" (quoting *McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984))); *see also Spears v.*

Consistent with the usual practices of this court and 28 U.S.C. § 636(b)(1), this matter was referred to the undersigned for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991); N.D. Ala. Local Rule 72.1. For the reasons stated below, the undersigned recommends that the court deny Edmonds' motion for summary judgment (Doc. 18) because there are genuine disputes of material fact for a jury and because—on the record facts—Edmonds is not entitled to qualified immunity.

## BACKGROUND

### A.    Factual background

#### 1.    Plaintiff Brooks' sworn allegations

In his sworn complaint, Brooks alleges the following:  On May 28, 2021, Brooks asked for a supervisor because he had not received a breakfast tray for two days.[3]  Doc. 1 at 4–5, 11.  Sergeant Tunstall responded and, after talking to Brooks, said he would have someone from mental health come speak with Brooks.  Doc. 1 at 11.  Thirty minutes later, when no one from mental health had come to speak with

---

*Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding that a prisoner plaintiff's complaints regarding the administrative segregation unit in a particular Alabama prison were moot after the plaintiff's transfer to a different prison).

[3] While Brooks alleges that he was "denied food" (Doc. 1 at 5, 7), in a prior statement he admitted that he had slept through breakfast for two days in a row.  Doc. 18-7 at 3.

Brooks, Brooks started a fire outside of his cell.[4]  Doc. 1 at 11.

Defendant Edmonds arrived with a fire extinguisher, water, and mace; he used the fire extinguisher and water to put out the fire, and then sprayed Brooks twice with the mace.  Doc. 1 at 11.  After spraying Brooks with mace, Edmonds ordered Brooks to "cuff up."  Doc. 1 at 11.  Brooks "instantly complied" by placing his arms through the tray slot/hole in his cell door.[5]  Doc. 1 at 11.  But Edmonds ordered Brooks to turn around to cuff up to the back, even though Edmonds knew that Brooks had a medical document stating that he should be handcuffed to the front.[6]  Doc. 1 at 11.  Brooks complied with Edmonds' instructions.  Doc. 1 at 11.

When Brooks put his arms through the tray slot in his cell door, Edmonds

---

[4] Brooks received a disciplinary action for starting this fire.  Doc. 11 at 12.  The disciplinary report reflects that Brooks "intentionally set a fire outside [his] assigned cell door.  In the process of starting this fire, [he] did destroy the padlock on the door, one mattress, one push broom, one regular broom, as well as damage to the paint on the cell door.  These items were ignited and pushed through the tray door."  Doc. 11 at 12.

[5] In his sworn response to Edmonds' summary judgment motion, Brooks avers that, when Edmonds told him to cuff up, Brooks responded that the door and tray slot were too hot, and that Edmonds responded, "So what?"  Doc. 20 at 1.  According to Brooks, Edmonds sprayed him with mace for a second time, and then repeated his instructions to "cuff up."  Doc. 20 at 1.

[6] Brooks submitted an undated health care form that states, "Single cuff to the front x 6 months (End 9-4-21)."  Doc. 11 at 6.  In his sworn response to Edmonds' summary judgment motion, Brooks avers that he reminded Edmonds that he had a front cuff profile, and that Edmonds responded, "So what, to the back."  Doc. 20 at 1.  Brooks received a disciplinary action for failing to obey a direct order.  Doc. 11 at 9.

"forcefully and intentionally" placed Brooks' forearms on the "scorching hot tray hole."[7]  Doc. 1 at 11.  Brooks sustained second and third degree burns on his forearms from the hot tray slot.  Doc. 1 at 11.

Edmonds then hit Brooks in the back of his neck and his lower back "multiple times" while escorting him to the infirmary.  Doc. 1 at 12; Doc. 20 at 1.  Edmonds also called Brooks "derogatory" and "homophobic" names.  Doc. 1 at 12.  Edmonds continued verbally assaulting Brooks in front of the two nurses who conducted Brooks' body chart examination.  Doc. 1 at 12.

Edmonds then took Brooks to the shower for decontamination, where he "forcefully" placed Brooks under the shower, and then continued physically assaulting Brooks by punching him in the head and lower back.  Doc. 1 at 12; Doc. 20 at 1.  Edmonds also grabbed Brooks' genitals, while stating "I'm going to break you b[*]tch!," and choked Brooks.[8]  Doc. 1 at 12; Doc. 20 at 1.

## 2. Edmonds' factual responses

Edmonds disputes Brooks' factual averments.  In a sworn affidavit, Edmonds

---

[7] In his sworn response to Edmonds' summary judgment motion, Brooks avers that Edmonds cuffed him while "slightly pulling [his] arms through the tray slot pressing [his] now cuffed wrists firmly upon the blazing hot metal of the cell door tray slot." Doc. 20 at 1.

[8] Brooks previously alleged that a nurse was present when Edmonds grabbed his genitals.  Doc. 18-7 at 3.  Brooks filed a Prison Rape Elimination Act (PREA) complaint against Edmonds on June 8, 2021.  Doc. 18-7 at 2.

avers as follows:  At approximately 1:15 pm on May 28, 2021, the cubicle operator for Brooks' cell unit called Edmonds on the radio to tell him to come to Brooks' unit; when Edmonds arrived, he observed a fire in front of Brooks' cell.  Doc. 18-4 at 1.  Edmonds used a fire extinguisher to put out the fire, and then gave Brooks "several direct orders to place both arms out the tray door to be handcuffed to the rear."  Doc. 18-4 at 1.  Brooks "refused all orders given," so Edmonds administered a burst of mace into the cell.  Doc. 18-4 at 1.  Edmonds once again ordered Brooks to place his hands through the tray slot to be handcuffed to the rear, and Brooks complied.  Doc. 18-4 at 1.  Edmonds and Sergeant Eddie Watts escorted Brooks to the infirmary for decontamination and medical assessment.  Doc. 18-4 at 1.  When they arrived at the infirmary, Brooks was taken out of Edmonds' custody.  Doc. 18-4 at 1.

### 3.    Other record evidence

An incident report from May 28, 2021, indicates that the cubical operator saw Brooks push materials through the tray hole in his cell door and light them on fire, and then called for Edmonds.  Doc. 18-5 at 2.  Edmonds and Sergeant Watts responded and saw a fire, which Edmonds extinguished.  Doc. 18-5 at 2.  Brooks failed to obey Edmonds' orders to allow himself to be handcuffed and to have his cell searched, and Edmonds deployed his mace.  Doc. 18-5 at 2.  Edmonds gave "several more direct orders," and Edmonds secured Brooks without further use of

force; Edmonds then escorted Brooks to the infirmary with Sergeant Watts. Doc. 18-5 at 2. Brooks was examined by Nurse Robin Jones, whom Brooks informed that he was suicidal; and Brooks subsequently received a mental health examination.[9] Doc. 18-5 at 2.

A use of force investigative report found that Edmonds' use of mace was reasonable to prevent injury to Brooks, damage to the prison, injury to other inmates, and to obtain compliance from Brooks. Doc. 18-6 at 2.

A body chart completed on May 28, 2021, shows that Brooks was burned and said that he was suicidal.[10] Doc. 11 at 5. Nurse Jones noted that Brooks had redness and blisters on the tops of both hands, and open blisters on both forearms. Doc. 11 at 5.

A health care form dated June 2, 2021, allowed Brooks to shower in the infirmary every other day "until wounds heal." Doc. 11 at 7. And a June 6, 2021, form states, "Please allow to come to HCU [health care unit] at pink slip time for daily dressing change to burn" on Brooks' right forearm "until healed." Doc. 11 at 8.

An investigative report restates the information from the incident report. Doc.

---

[9] Brooks does not allege any excessive use of force while he was in the infirmary, and Nurse Jones stated that no force was used in her presence. Doc. 18-7 at 3.

[10] Brooks was placed on non-acute suicide watch. Doc. 18-7 at 3; *see* Doc. 18-3 at 3.

18-7 at 2.  The investigative report also recognized that the fire that Brooks started caused the tray slot and the entire cell door to become very hot, resulting in Brooks' arms being burned.  Doc. 18-7 at 2.  During the investigation, Sergeant Watts told the investigator that he had not seen any force used against Brooks other than mace.  Doc. 18-7 at 2.  The investigative report also states that Brooks filed a Prison Rape Elimination Act (PREA) claim against Edmonds on June 8, 2021.  Doc. 18-7 at 2.  Brooks refused to speak to the investigator about the fire, but agreed to discuss his excessive force and PREA claims.  Doc. 18-7 at 3.  Brooks recounted the facts alleged in his complaint.  Doc. 18-7 at 3.  The investigator interviewed Edmonds, who stated that he did not use any force against Brooks other than mace, and that he did not grab Brooks by the genitals.  Doc. 18-7 at 3.  Edmonds asserted that, when he handcuffed Brooks, he did not know the door had become as hot as it was.  Doc. 18-7 at 5.

The investigator found no evidence to substantiate either the excessive force claim or the PREA claim against Edmonds.  Doc. 18-7 at 5; *see* Doc. 18-6 at 2; Doc. 18-8 at 2.  But the investigator did recommend that criminal charges against Brooks for second degree arson be brought to the Jefferson County District Attorney for further review.  Doc. 18-7 at 5.  Brooks' PREA complaint was found to be unsubstantiated.  Doc. 18-8 at 2.

## B.    Legal background

### 1.    Excessive force under the Eighth Amendment

Under the Eighth Amendment,[11] "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)) (quotation marks omitted).    "What is necessary to establish an 'unnecessary and wanton infliction of pain' . . . varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley*, 475 U.S. at 320).

In the context of a custodial excessive force claim, "corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Id.* at 6 (citations omitted).    And, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Id*.

For instance, the use of force generally is justified where it is "necessary to restore order." *See, e.g.*, *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990);

---

[11] *See, e.g.*, *McDonald v. City of Chicago, Ill*., 561 U.S. 742, 764 & n.12 (2010); *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (stating that, with a few exceptions, the United States Supreme Court "has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the States").

*accord Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) ("In general, prison officials are authorized to use force when a prisoner repeatedly fails to obey an order . . . Officers are not required to convince every prisoner that their orders are reasonable . . . before resorting to force." (citations omitted)).

Regardless, on a custodial excessive force claim, "whenever prison officials stand accused of using excessive physical force," the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (similar).

The United States Supreme Court has articulated factors for "determining whether the use of force" in the custodial context "was wanton and unnecessary." *Hudson*, 503 U.S. at 7; *see also Whitley*, 475 U.S. at 319 ("the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment").

Those factors (commonly referred to as the *Whitley* factors) include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Also, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular

situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Id*. (quoting *Whitley*, 475 U.S. at 321). "The extent of injury may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). So, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7.

In addition, the U.S. Supreme Court has instructed that "courts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the *alleged wrongdoing* was objectively 'harmful enough' to establish a constitutional violation." *Id.* at 8 (citation and quotation marks omitted; alteration in original; emphasis added). In this regard, the Supreme Court has referred to a "subjective" and "objective" component of a custodial excessive force claim. *Id*. ("the subjective aspect of an Eighth Amendment claim . . . can be distinguished from the objective facet of the same claim").

For the subjective component, analyzed under the *Whitley* factors, a court should be mindful of the prison officials' point of view based on the facts known at the time, and should "give a wide range of deference to prison officials acting to preserve discipline and security." *Sears*, 922 F.3d at 1205 (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). A court should recognize that "corrections officials must make their decisions in haste, under pressure, and frequently without

the luxury of a second chance" (*Hudson*, 503 U.S. at 6 (citations omitted)), but that deference "does not insulate from review actions taken in bad faith or for no legitimate purpose" (*Whitley*, 475 U.S. at 322).

For the objective component, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted); *see Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (citations and quotation marks omitted); *see Wilkins*, 559 U.S. at 38 ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citations and quotation marks omitted)).

But, regardless "whether or not significant injury is evident," "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary

quantity of injury." *Id.*

As the Supreme Court has explained, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins*, 559 U.S. at 38. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.*

### 2.     Qualified immunity

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)). In order to receive the protection of qualified immunity, a government official first must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004).

To show that an official who acted within the scope of his discretionary authority is not entitled to qualified immunity, a plaintiff must establish that both

"(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (citation omitted).  A court may address these two prongs "in either order." *Waldron v. Spicher*, 954 F.3d 1297, 1304 (11th Cir. 2020).

For a right to be clearly established, a plaintiff can either identify case precedents with materially similar facts or show that the violation was so obvious that every reasonable officer would know that his actions were unconstitutional. *Corbitt v. Vickers*, 929 F.3d 1304, 1311–12 (11th Cir. 2019).  In other words, the law must give the officer "fair warning" that his conduct is unconstitutional. *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 955 (11th Cir. 2019) (citations omitted).  In analyzing qualified immunity, courts focus not only on the state of the law, but on the factual information that the defendant possessed at the time of the alleged violation.  *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (stating that the qualified immunity analysis "will often require examination of the information possessed by" the defendant official).

## C.    Procedural background

In response to an order for special report (Doc. 10), Edmonds filed a special report, supported by affidavits and other evidence.  Doc. 18.  Brooks also filed a response to the order for special report.  Doc. 11.

On July 19, 2022, the parties were notified that the court would construe the

special report as a motion for summary judgment, and Brooks was notified that he had an opportunity to respond to the summary judgment motion by filing affidavits or other materials.  Doc. 19.  Brooks also was advised of the consequences of any failure to respond or comply with Federal Rule of Civil Procedure 56.  Doc. 19; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  On August 5, 2022, Brooks filed a sworn response regarding the sworn allegations in his complaint. Doc. 20.

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

To avoid summary judgment, the nonmovant must go beyond the allegations to offer specific facts that create a genuine dispute for trial.  *Celotex*, 477 U.S. at 324–25.  The court's job is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  The court must construe all evidence and draw all reasonable inferences

in favor of the nonmovant.  *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c).

In addition, when ruling on a defendant's summary judgment motion, the court must consider any "specific facts" that a *pro se* plaintiff pleaded in his sworn complaint.  *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  The court liberally construes a *pro se* pleading.  *See, e.g.*, *Jones v. Florida Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (the court should hold a *pro se* pleading to "a less stringent standard than a pleading drafted by an attorney").

Furthermore, the practical reality that a plaintiff's "evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists."  *Sears*, 922 F.3d at 1208.  And, "[e]ven if his sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact" for trial.  *Id.* at 1209.  When ruling on a summary judgment motion, a court cannot make credibility determinations.  *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).

## DISCUSSION

The undersigned recommends that the court deny Defendant Edmonds'

summary judgment motion on Plaintiff Brooks' excessive force claim because there is a genuine dispute of material fact on whether Edmonds violated Brooks' Eighth Amendment right.   In addition, Edmonds is not entitled to qualified immunity because—on the record facts—that right was clearly established at the time of the alleged violation.[12]

**I.**     On Brooks' excessive force claim, there is a triable issue of fact for a jury on whether Edmonds violated Brooks' Eighth Amendment right.[13]  Construing all evidence and all reasonable inferences in Brooks' favor, the court cannot say—

---

[12] As noted above, Brooks' complaint includes conclusory allegations that he was denied meals.  Doc. 1 at 5, 7, 11.  But, even liberally construed, Brooks' complaint does not allege a claim against any defendant related to any denial of meals.  To the extent that Brooks might seek to raise a claim related to any denial of meals, his complaint fails to include factual allegations connecting an alleged deprivation to any specific defendant—much less to Edmonds.  In this regard, Brooks' complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and fails to state a claim for any conduct related to any supposed denial of meals.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] Brooks does not specify whether he sues Edmonds in his official and/or individual capacity.  But Brooks cannot state a claim against Edmonds in his official capacity because sovereign immunity would bar any such official capacity claim, as Edmonds is an employee of the Alabama Department of Corrections and thus an agent of the state.  *See Pennhurst State Sch. & Hosp. v Halderman*, 465 U.S. 89, 100 (1984); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his official capacity is a suit against the state itself); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (the Eleventh Amendment prohibits a suit against the state absent the state's consent to the suit).  Consequently, the court should construe Brooks' claim as alleged against Edmonds only in his individual capacity.  *See generally Chandler v. Vansuch*, 2022 WL 1721220, at *2–3 (N.D. Fla. April 6, 2022) (reasoning that, regardless of a *pro se* prisoner plaintiff's specification of the capacity in which a claim is brought, a court must consider the appropriate capacity).

as a matter of law—"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

The parties do not dispute that Brooks started a fire outside his cell, or that Edmonds extinguished the fire, used mace against Brooks, and ordered Brooks to "cuff up" to the back. Doc. 1 at 11; Doc. 18-4 at 1. The parties do not dispute that Brooks eventually, but not immediately, complied with Edmonds' order to present his hands to cuff up to the back. Doc. 1 at 11; Doc. 18-4 at 1. The parties also do not dispute that Brooks was already in segregation and had a history of major prison infractions and disturbances. *See* Doc. 18-1 at 5–9.

Nevertheless, there are genuine disputes of material facts about whether Edmonds acted in good faith to restore order after Brooks started a fire and disobeyed orders, or whether Edmonds acted maliciously and/or sadistically to harm Brooks. *See Hudson*, 503 U.S. at 7. The disputed facts include the following, among others: whether Edmonds "forcefull[y] and intentionally placed [Brooks'] forearms on the scorching hot tray hole" with an intent to harm, and pressed down until Brooks sustained serious burns; whether Edmonds hit Brooks multiple times in the head, neck, and back, while Brooks was handcuffed, and while Brooks complied with Edmonds' orders; and whether Edmonds grabbed Brooks by the genitals, while threatening him (stating "I'm going to break you b[*]tch!"), and choked him, again

17

while Brooks was compliant with Edmonds' orders.  Doc. 1 at 11–12; Doc. 20 at 1–2.

Moreover, Edmonds has asserted that he did not know Brooks' cell door had become dangerously hot from the fire (Doc. 18-7 at 5), but Brooks also avers that, when Edmonds told him to cuff up, Brooks responded that the door and tray slot were too hot, and that Edmonds responded, "So what?"  Doc. 20 at 1.  Edmonds has not disputed that averment; and, even if he did, that factual dispute would be for a jury to resolve.

Brooks' sworn allegations and Edmonds' affidavit amount to evidence that merely "pits the correctional officers' word against an inmate's."  *Rivera v. LeBron*, 824 F. App'x 838, 842 (11th Cir. 2020) (citing *Sears*, 922 F.3d at 1208–09); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, [the plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . '[C]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'" (citations omitted)).

Even if Brooks' allegations "turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact" for trial.  *Sears*, 922 F.3d at 1209. This is "a classic swearing match, which is the stuff of which jury trials are made."  *Id.* at 1208.  "[W]hen it comes to arguing the merits, [a defendant] should not—may

not—rely on his own factual story.  Rather, he should—must—accept his opponent's story and convince [the court] that he is nonetheless entitled to prevail as a matter of law." *Patel v. Lanier Cty. Ga.*, 969 F.3d 1173, 1179 n.1 (11th Cir. 2020).

Again (as explained above), a prison official's use of force generally is justified where it is "necessary to restore order" (*Bennett*, 898 F.2d at 1533), and the court should "give a wide range of deference to [a] prison official[] acting to preserve discipline and security" (*Sears*, 922 F.3d at 1205).  In this regard, a reasonable jury could find that some, if not all, of Edmonds' alleged use of force was reasonable and not excessive—for example, the use of mace.  But, based on Brooks' averments that Edmonds intentionally burned his forearms and continued to use force when Brooks was not only restrained but compliant with orders, a reasonable jury still could find that some, if not all, of Edmonds' alleged conduct constituted an unreasonable and excessive use of force to maliciously or sadistically harm Brooks, rather than to maintain or restore discipline.  *See Hudson*, 503 U.S. at 6–7.  For instance, if a jury were to find that Edmonds purposefully held Brooks' forearms on the hot tray hole, with knowledge that it was hot from the fire, then the jury reasonably could conclude that Edmonds' conduct was an "unnecessary and wanton infliction of pain" (*Whitley*, 475 U.S. at 319, 321) that violated "contemporary standards of decency" (*Hudson*, 503 U.S. at 9).

At this stage (and given the parties' conflicting versions of the relevant

incident), the court cannot assess the credibility of the parties; that assessment is for a jury.  *See, e.g.*, *Miller*, 458 F.3d at 1256 (even if the court "believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices" (citations omitted)); *see also Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("when conflicts arise between the facts evidenced by the parties," the court must "credit the nonmoving party's version" (emphasis omitted)).  As in *Sears*, "[w]e do not know what the true facts are, but we do know that a genuine dispute of material fact exists."  922 F.3d at 1209.

II.     On Brooks' excessive force claim, Edmonds is not entitled to qualified immunity because—on the record facts—Brooks' Eighth Amendment right was clearly established at the time of the alleged violation.  Edmonds asserts he is entitled to qualified immunity.  Doc. 18 at 13.  The parties do not dispute that Edmonds was acting within his discretionary authority.  *See Kesinger*, 381 F.3d at 1248.  And, as discussed above (*see supra* Part I), a reasonable jury could find that Edmonds violated Brooks' Eighth Amendment right.  *See Townsend*, 601 F.3d at 1158.  Consequently, the question is whether that right was clearly established at the time of the alleged violation.  *See id.*

Here, reviewing the record facts in the light most favorable to Brooks, Edmonds knew that the cell door tray hole was dangerously hot from the fire and

intentionally held Brooks' forearms on that hot tray hole. *See, e.g.*, *Anderson*, 483 U.S. at 641 (analysis "require[s] examination of the information possessed by" the defendant at the relevant time).

Edmonds had "fair warning" that such alleged conduct is unconstitutional. *Piazza*, 923 F.3d at 955; *see also Pullen v. Osceola Cty.*, 861 F. App'x 284, 290 (11th Cir. 2021) (holding that the use of force "maliciously and sadistically to cause harm" is a clearly established violation of the Eighth Amendment, and that "[t]here is simply no room for a qualified immunity defense when the plaintiff alleges such a violation" (quoting *Skrtich v. Thorton*, 280 F.3d 1295, 1302 (11th Cir. 2002))). On this summary judgment motion, the record facts suffice for Brooks to overcome qualified immunity.

## RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the court **DENY** Defendant Edmonds' summary judgment motion (Doc. 18) on Plaintiff Brooks' Eighth Amendment excessive force claim.

## NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days**. The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party

also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order.  Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings of fact and recommendations.  The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment entered by a District Judge.

**DONE** this January 10, 2023.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE